# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

**UNITED STATES OF AMERICA,**

*Plaintiff,*

v.

**MICHAEL S. JEFFRIES**

*Defendant.*

**CASE NO. 24-CR-00423-NJC-1**

**DEFENDANT'S MOTION TO SEAL AUDIO RECORDINGS OF FMC BUTNER TELEPHONE CALLS  AND JANUARY 2026 COMPETENCY RE-EVALUATION, AND INCORPORATED MEMORANDUM OF LAW**

**GRAYROBINSON, P.A.**
Attorneys for Defendant
333 S.E. 2nd Avenue, Suite 3200
Miami, Florida, 33131
Telephone: (305) 416-6880
Facsimile: (305) 416-6887
Brian.Bieber@gray-robinson.com
Alek.Ubieta@gray-robinson.com

By:　　s/Brian H. Bieber
　　　　BRIAN H. BIEBER
　　　　New York Bar #4747507

　　　　s/Alek Ubieta
　　　　ALEK UBIETA
　　　　Florida Bar #1039546
　　　　*Admitted Pro Hac Vice*

Date of Service: May 28, 2026 (via ECF)

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................[3–4]

I.    INTRODUCTION ........................................................................................[5]

II.   PROCEDURAL HISTORY ...........................................................................[6]

III.  MEMORANDUM OF LAW .........................................................................[8]

    A. LEGAL STANDARD ...............................................................................[8]

      1. THE QUALIFIED COMMON LAW  RIGHT OF ACCESS .........................[8]

      2. THE QUALIFIED FIRST AMENDMENT RIGHT OF ACCESS ...............[10]

      3. THE SIXTH AMENDMENT AND LIMITATIONS ON THE PUBLIC'S
         QUALIFIED RIGHT OF ACCESS.................................................................[11]

    B. ANALYSIS ............................................................................................[12]

      1. THE COURT SHOULD TEMPORARILY SEAL THE BUTNER CALLS TO
         PRESERVE MR. JEFFRIES' PARAMOUNT SIXTH AMENDMENT RIGHT
         TO A FAIR TRIAL .............................................................................[12]

      2. MR. JEFFRIES' SIGNIFICANT PRIVACY INTEREST IN MAINTAINING
         HIS PERSONAL MEDICAL INFORMATION CONFIDENTIAL
         OVERRIDES THE PUBLIC'S RIGHT OF ACCESS TO THE JANUARY
         2026 COMPETENCY RE-EVALUATION RECORDINGS ........................[16]

IV.   CONCLUSION ........................................................................................[18]

CERTIFICATE OF SERVICE .........................................................................[19]

## TABLE OF AUTHORITIES

### CASE LAW

Belo Broadcasting Corp. v. Clark,
654 F.2d 423 (5th Cir. 1981) ...............................................................................................[14]

Brown v. Maxwell,
929 F.3d 41 (2d Cir. 2019)...................................................................................................[9]

Deide v. Day,
Case No. 23-CV-3954-NSR, 2023 WL 8602879, at *2 (S.D.N.Y. Dec. 11, 2023) ..................[16]

In re NBC Universal, Inc.,
426 F. Supp. 2d 49 (E.D.N.Y. 2006) .............................................................................[passim]

In re the Matter of New York Times Co.,
828 F.2d 110 (2d Cir. 1987)...............................................................................................[11]

Lugosch v. Pyramid Co. of Onondaga,
435 F.3d 110 (2d Cir. 2006)............................................................................................[8–11]

Mirlis v. Greer,
952 F.3d 51 (2d Cir. 2020)...........................................................................................[13, 15]

Nixon v. Warner Communications, Inc.,
435 U.S. 589 (1978)......................................................................................................[8, 13]

Press-Enterprise Co. v. Superior Court of California, Riverside County(Press-Enterprise I),
464 U.S. 501 (1984)......................................................................................................[5, 11]

Press-Enterprise Co. v. Superior Court of California for Riverside County (Press-Enterprise II),
478 U.S. 1 (1986)..........................................................................................................[11–13]

United States v. Amodeo,
71 F.3d 1044 (2d Cir. 1995).........................................................................................[5, 9, 16]

United States v. Cojab,
996 F.2d 1404 (2d Cir. 1993)........................................................................................[11–12]

United States v. Gotti,
753 F. Supp. 443 (2d Cir. 1990) ...................................................................................[11, 14]

United States v. Graham,
257 F.3d 143 (2d Cir. 2001)..........................................................................................[8–9]

United States v. Greenwood,
145 F.4th 248 (2d Cir. 2025) ................................................................................[9–10]

United States v. Roeder,
Case No. 05-CR-6161L, 2009 WL 385448, at *2 (W.D.N.Y. Feb. 13, 2009) ..........................[17]

United States v. Sattar,
471 F. Supp. 2d 380 (S.D.N.Y. 2006) ....................................................................[16]

United States v. Smith,
985 F. Supp. 2d 506 (S.D.N.Y. 2013) ......................................................................[8–9]

United States v. Suarez,
Case No. 16-CR-453-RJS, 2024 WL 2317413, at *1 (S.D.N.Y. May 22, 2024) ......................[17]

United States v. Yeghoyan,
Case No. 20-CR-652-VM, 2024 WL 2945976, at *3 (S.D.N.Y. June 11, 2024) ......................[17]

Waller v. Georgia,
467 U.S. 39 (1984) ............................................................................................[11]

## CONSTITUTIONAL PROVISIONS AND STATUTES

U.S. Const. amend. VI ........................................................................................[11]

## I.    INTRODUCTION

Among the spectrum of constitutional rights implicated in the criminal justice process, none ranks higher than the right of the accused to a fair trial. See Press-Enterprise Co. v. Superior Court of California, Riverside County, 464 U.S. 501, 508 (1984) ("Press-Enterprise I"). Given the procedural posture of this case, and for the reasons delineated herein, it is necessary to maintain certain exhibits introduced by the Government during the March 24 to 27, 2026 competency hearing under seal based on the applicable caselaw. Mr. Jeffries' proposed safeguards are both necessary and narrowly tailored to ensure that his Sixth Amendment right to a fair trial is not jeopardized simply "to cater to a morbid craving for that which is sensational and impure." See United States v. Amodeo, 71 F.3d 1044, 1051 (2d Cir. 1995) (stating that courts have the power to ensure that their records are not used to promote public scandal).

As such, Mr. Jeffries respectfully requests that the Court **temporarily** seal the 109 recordings of his telephone conversations captured during Mr. Jeffries' custodial hospitalization at the Butner Federal Medical Center (the "Butner calls") (GX-300 to GX-408), and transcripts of same (GX-300T to GX-408T), until after the trial in this cause has concluded, should the Court not grant Mr. Jeffries' pending motion to declare him incompetent to proceed. In addition, Mr. Jeffries asks that the Court seal the three (3) audio recordings from Mr. Jeffries' January 12 and 13, 2026 competency re-evaluation conducted by Drs. Alexander Bardey, Cheryl Paradis, and Miranda Rosenberg (GX-4 to GX-6) until further order of the Court, because these items constitute "medical records" in which he has a substantial privacy interest in maintaining confidential.

Given the level of openness of the competency proceedings thus far, this Motion requesting that the Court: (1) temporarily delay release of the Butner calls and transcripts; and (2) seal the competency re-evaluation recordings, strikes an appropriate and fair balance between Mr. Jeffries'

right to a fair trial, his significant privacy interest in keeping his medical records confidential, and the public's qualified right of access to judicial records.

## II.     PROCEDURAL HISTORY

1.     On March 10, 2026, the parties submitted their respective Exhibit Lists in advance of the competency hearing that occurred from March 24 to March 27, 2026. (D.E.s 83 and 84).

2.     Mr. Jeffries' initial competency hearing exhibits consisted of seven (7) competency evaluation reports prepared by defense experts Drs. Alexander Bardey, Miranda Rosenberg, and Jacqueline Valdes, and voluminous personal medical records. See Letter Enclosing Defendant's Expert Witness Disclosure Cover Letter and Competency Hearing Exhibit List. (D.E. 84).

3.     The Government's competency hearing exhibits consisted of three (3) competency evaluation reports prepared by its experts, Drs. Cassondra Morris, Cheryl Paradis, and Tracy O'Connor Pennuto (GX-1 to GX-3), three (3) audio recordings from Mr. Jeffries' January 12 and 13, 2026 competency re-evaluation (GX-4 to GX-6),[1] 109 recorded telephone conversations (mostly between Mr. Jeffries and his partner/co-defendant, Matthew Smith) during Mr. Jeffries' custodial hospitalization at the Butner Federal Medical Center (GX-300 to GX-408), and transcripts of the Butner calls (GX-300T to GX-408T). See Letter to Court Enclosing Expert Witness Disclosure Cover Letter, Exhibit List, and 3500 List for Competency Hearing. (D.E. 83).

4.     On March 16, 2026, Mr. Jeffries moved to seal his competency hearing exhibits based on his significant privacy interest in maintaining his personal medical records and the expert competency evaluation reports[2] confidential. See Defendant's Unopposed Letter Motion for Leave

---

[1] The Government incorrectly/inadvertently identified these items on their initial exhibit list as audio recordings of the Bureau of Prisons' evaluation of Mr. Jeffries.

[2] Mr. Jeffries had previously also filed the various competency evaluation reports prepared by the defense's experts under seal.

to Electronically File Competency Hearing Exhibits Under Seal. (D.E. 87). On March 17, 2026, the Court granted Mr. Jeffries' unopposed letter motion to seal his competency hearing exhibits. See March 17, 2026 Sealed Order Granting Defendant's Unopposed Letter Motion for Leave to Electronically File Competency Hearing Exhibits Under Seal.

5.     On March 17, 2026, the parties filed a joint letter stipulating to the authenticity and admissibility of their respective exhibits for the competency hearing. (D.E. 89). All exhibits submitted by the parties were later admitted into evidence during the course of the four-day competency hearing.

6.     On March 24, 2026, prior to the commencement of expert witness testimony at the competency hearing, the Court inquired whether any of the materials/exhibits that the parties intended to utilize during the proceedings merited "a conversation about sealing." See March 24, 2026 Competency Hearing Transcript at 9:7–20.

7.     The parties agreed that Mr. Jeffries' medical records and the experts' competency evaluation reports should remain sealed. Id. at 9:22–25; 10:1–8. Mr. Jeffries objected to the Butner calls, transcripts of same, and recordings from his competency re-evaluation being released to the public, should a request of the prosecutors be made to do so, and asserted that they should remain under seal in order to preserve his Sixth Amendment constitutional right to a fair trial in the event he is deemed competent to be tried.[3] Id. at 10:17–25; 11:1–10. The Government stated it did not believe that any exhibits, apart from Mr. Jeffries' medical records and the experts' reports, should remain under seal. Id. at 10:9–14.

---

[3] Now, post-hearing, Mr. Jeffries submits that the evidence demonstrated he is incompetent and, should the Court agree, Mr. Jeffries' position is that this Motion is moot as to the recorded Butner calls. However, the January 12 and 13, 2026 competency re-evaluation recordings should remain under seal.

8.      The Court deferred ruling on this issue to permit the parties an opportunity to submit memoranda of law addressing whether the Butner calls and recordings of Mr. Jeffries' January 12 and 13, 2026 competency re-evaluation should remain sealed.

9.      Though no requests have been made for disclosure, for the reasons set forth below, Mr. Jeffries respectfully requests that the Court **temporarily** maintain the Butner calls and transcripts thereof under seal in order to preserve his Sixth Amendment right to a fair trial. In addition, Mr. Jeffries asks that the Court seal the recordings of his January 12 and 13, 2026 competency re-evaluation because of his substantial privacy interest in keeping his medical records/information confidential.

### III.    MEMORANDUM OF LAW

### A.    LEGAL STANDARD

### 1. The Qualified Common Law Right of Access

The United States Supreme Court has held that the public has a common law right to inspect and copy public records and documents, including judicial records and documents. See United States v. Smith, 985 F. Supp. 2d 506, 518 (S.D.N.Y. 2013) (citing Nixon v. Warner Communications, Inc., 435 U.S. 589, 597 (1978)). The common law right to inspect and copy judicial records applies to audio and video tapes. See United States v. Graham, 257 F.3d 143, 152–53 (2d Cir. 2001).

When deciding whether a particular piece of evidence should be publicly accessible, the Court must: (1) determine if it is a judicial document; (2) determine the weight of the presumption of access attached to same; and (3) balance the countervailing interests against the presumption of access. Smith, 985 F. Supp. 2d at 518; see also Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119–120 (2d Cir. 2006).

8

To be designated a "judicial document," the item filed must be relevant to the performance of the judicial function and useful in the judicial process. See United States v. Greenwood, 145 F.4th 248, 254 (2d Cir. 2025) (internal quotation and citation omitted). A document is relevant to the performance of the judicial function if it would reasonably have the tendency to influence the Court's ruling on a motion or in the exercise of its supervisory powers, without regard to which way the Court ultimately rules or whether the document ultimately in fact influences the Court's decision. See Brown v. Maxwell, 929 F.3d 41, 49 (2d Cir. 2019).

Relatedly, the weight of the presumption of access that applies is determined by the role that the material at issue plays "in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." See Amodeo, 71 F.3d at 1049. The presumption of access is higher for documents submitted as part of dispositive-motion practice. See Smith, 985 F. Supp. 2d at 518 (citing Lugosch, 435 F.3d at 123). A middling presumption of access attaches to documents that do not serve as the basis for a substantive judicial determination. See In re NBC Universal, Inc., 426 F. Supp. 2d 49, 53 (E.D.N.Y. 2006). Documents that play only a negligible role in judicial functions have a very low presumption of access, while those that play no role in Article III functions are beyond the presumption's reach. Id.

While the common law right of access predates the United States Constitution, it is not absolute, nor is it of constitutional dimension. Id. at 52; see also Graham, 257 F.3d at 154 (explaining that the common law right of access must bow to a defendant's right to a fair trial if the two rights are irreconcilable). Sub judice, the relevant countervailing factors that weigh against the public's right of access include Mr. Jeffries' Sixth Amendment right to a trial by a jury untainted by exposure to irrelevant and prejudicial information, as well as his privacy interests in

the material sought to be inspected/copied. See In re NBC Universal, 426 F. Supp. 2d at 52; Lugosch, 435 F.3d at 120.

### 2. The Qualified First Amendment Right of Access

The First Amendment guarantees the public and press a qualified right to attend criminal trials and pretrial motion hearings. See In re NBC Universal, 426 F. Supp. 2d at 56; see also Lugosch, 435 F.3d at 120 ("it is well established that the public and the press have a qualified First Amendment right to attend judicial proceedings and to access certain judicial documents.") (internal quotation omitted). Included is the right to be informed of the evidence placed before the factfinder. In re NBC Universal, 426 F. Supp. 2d at 56.

The First Amendment demands broader disclosure than the common law. Id.; see also Greenwood, 145 F.4th at 255 (stating that the qualified First Amendment right of access is understood to be stronger than its common law ancestor/counterpart). However, the right of disclosure does not necessarily embrace the right to reproduce documents submitted in support of pretrial motions. See In re NBC Universal, 426 F. Supp. 2d at 56–57. The First Amendment values served by open court proceedings require that citizens know what has transpired in the courtroom; **they do not require that they receive that information in the most dramatic form**. Id. at 57 (emphasis added).

The Second Circuit Court of Appeals has articulated two (2) different approaches to determine whether the public and the press should receive First Amendment protection in their attempts to access certain judicial documents. See Lugosch, 435 F.3d at 120. The first approach, known as the "experience and logic" test, requires the Court to consider both whether the documents have historically been open to the press and general public and whether public access plays a significant positive role in the functioning of the particular process in question. Id. (internal

10

quotations omitted). Courts that undertake this type of inquiry generally invoke the common law right of access to judicial documents as support for finding a history of openness. Id. The second approach considers the extent to which the judicial documents are derived from or are a necessary corollary of the capacity to attend the relevant proceedings. Id. (internal quotations omitted).

Like its common law counterpart, the First Amendment right of access is not absolute. See In re the Matter of New York Times Co., 828 F.2d 110, 116 (2d Cir. 1987). After the Court determines that a qualified First Amendment right of access exists, judicial documents may still be sealed if specific, on-the-record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest. Lugosch, 435 F.3d at 120.

### 3. The Sixth Amendment and Limitations on the Public's Qualified Right of Access

The Sixth Amendment of the United States Constitution provides, in relevant part, that: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, **by an impartial jury**...." U.S. Const. amend. VI. (emphasis added). "The central aim of a criminal proceeding must be to try the accused fairly." United States v. Gotti, 753 F. Supp. 443 (2d Cir. 1990) (quoting Waller v. Georgia, 467 U.S. 39, 46 (1984)). The United States Supreme Court has recognized that no right ranks higher than the right of the accused to a fair trial. See Press-Enterprise I, 464 U.S. at 508.

To protect a defendant's Sixth Amendment right to a fair trial, a courtroom may be closed and its records sealed. United States v. Cojab, 996 F.2d 1404, 1405 (2d Cir. 1993). "While open criminal proceedings give assurances of fairness to both the public and the accused, there are some limited circumstances in which the right of the accused to a fair trial might be undermined by publicity. See Press-Enterprise Co. v. Superior Court of California for Riverside County, 478 U.S. 1, 9 (1986) ("Press-Enterprise II"). In such cases, the Court must determine whether the situation

11

is such that the rights of the accused override the qualified First Amendment right of access. Id.; see also Cojab, 996 F.2d at 1405 (the "[f]reedom of the press and public to attend criminal trials and pretrial proceedings, a right conferred by the First Amendment, is not designed to override right of a defendant to receive a fair verdict from an impartial jury.").

The Court is permitted to seal judicial records only if specific findings are made demonstrating that: (1) there is a substantial probability that the defendant's right to a fair trial will be prejudiced by publicity that closure would prevent; and (2) that reasonable alternatives to closure cannot adequately protect the defendant's fair trial rights. See Press-Enterprise II, 478 U.S. at 14.

As more fully set forth below, the circumstances sub judice warrant temporarily sealing the Butner calls and sealing the competency re-evaluations in order to preserve Mr. Jeffries' Sixth Amendment right to a fair trial and privacy interest in maintaining his personal medical records confidential.

**B.    ANALYSIS**

**1.  The Court Should *Temporarily* Seal the Butner Calls to Preserve Mr. Jeffries' Paramount Sixth Amendment Right to a Fair Trial**

Mr. Jeffries acknowledges that a right of access to the Butner calls applies under the common law and First Amendment. Should the Court determine that Mr. Jeffries is incompetent to stand trial, such a finding would obviate the need to temporarily maintain the Butner calls under seal. However, the negative publicity that would ensue if the public/media is permitted to access, copy, and disseminate the Butner calls would result in irreparable prejudice and deny Mr. Jeffries his constitutional right to a fair trial if he is found competent to proceed. The need to protect Mr. Jeffries' Sixth Amendment right represents a compelling countervailing interest (under the common law) and higher value (under the First Amendment) that warrants temporarily delaying

the release of the Butner calls until trial in this matter has concluded (assuming, *arguendo*, that Mr. Jeffries is found competent to be tried).

To date, there has been extensive national and international media coverage of the allegations sub judice, including but not limited to: a documentary[4] produced by the British Broadcasting Corporation ("BBC"); a ten-part podcast series[5]; and countless online news articles.[6] The publicity regarding this case has been overwhelmingly negative, one-sided, and prejudicial towards Mr. Jeffries—despite the fact that he is presumed innocent until proven guilty beyond a reasonable doubt. Allowing the public/media to duplicate and distribute the Butner calls would substantially hinder Mr. Jeffries' right to a fair trial. If these recordings are released, the media will assuredly distort, take out of context, and sensationalize them—making it difficult to find jurors who had not seen or heard of them. See Press-Enterprise II, 478 U.S. at 14 (acknowledging that publicity concerning the proceedings at a pretrial hearing could influence public opinion against a defendant and inform potential jurors of inculpatory information that may be wholly inadmissible at the actual trial); see also Mirlis v. Greer, 952 F.3d 51, 56 (2d Cir. 2020) (observing that the Supreme Court "has instructed that access to judicial documents should not be permitted 'to gratify private spite or promote public scandal with no corresponding assurance of public benefit'") (quoting Nixon, 435 U.S. at 603). Why take a chance at endangering Mr. Jeffries' right to a fair

---

[4] See "The Abercrombie Guys: The Dark Side of Cool," Livingston, Hannah, BBC (2023).

[5] See "The Abercrombie Guys," Croxford, Rianna and Evans, Ruth, BBC (2023–2024).

[6] See, e.g., "'I Constantly Was Saying No:' Ex-Abercrombie & Fitch Boss Accused of Abuse at Global Sex Events," Jon Ungoed-Thomas and Roya Shahidi, The Guardian (September 14, 2024); "Former Abercrombie & Fitch CEO Mike Jeffries is All Smiles With an Ankle Monitor as he Posts $10M Bond Following Sex-Trafficking Arrest," Alex Oliveira, New York Post (October 22, 2024); "Ex-Abercrombie Boss Now Facing Abuse Claims from 40 Men," Rianna Croxford, BBC (March 21, 2025); "Victims' Lawyer Questions Timing of Dementia Diagnosis of Ex-Abercrombie CEO Mike Jeffries," Michael Loria, USA Today (December 25, 2024); and "Feds Hit Play on Abercrombie & Fitch Ex-CEO's Prison Tapes," Laura Italiano, Business Insider (March 26, 2026).

trial? "It is better to err, if err [the Court] must, on the side of generosity in the protection of a defendant's right to a fair trial before an impartial jury." See Gotti, 753 F. Supp. at 446 (quoting Belo Broadcasting Corp. v. Clark, 654 F.2d 423, 431 (5th Cir. 1981)).

The prejudicial impact of permitting access to the Butner calls at this point is further exacerbated by the existence of the internet, the ubiquity of mobile phones and social media, and the ease of listening to the recordings if they were to be posted online. Moreover, any interested party could have attended the competency hearing and listened to these items, and may still obtain transcripts of the four-day proceedings.

Given the unique circumstances of this case, the level of publicity it has received, and today's modern/technological "times," there are no reasonable alternatives to this narrowly tailored request to delay release of the Butner calls that would adequately protect Mr. Jeffries' right to a fair trial. Expanded voir dire would be insufficient if a large number of the potential jurors in this district are exposed to the prejudicial media coverage resulting from widespread publication and distortion of the substance of the Butner calls. In addition, potential jurors' assurances that they have not been, nor will be, influenced by media reports are not necessarily dispositive. See In re NBC Universal, Inc., 426 F. Supp. 2d at 58.

Mr. Jeffries' request to temporarily delay release of the Butner calls until after trial is further bolstered by the fact that the competency proceedings sub judice have not been conducted in secret. Thus far, the only items related to the competency proceedings that have been sealed are Mr. Jeffries' personal medical records and the competency evaluation reports prepared by the parties' respective expert witnesses/evaluators. By contrast, Mr. Jeffries' initial Motion to Determine Competency to Stand Trial, at first filed under seal, was made public. See Letter Regarding Continued Sealing of Defendant's Unopposed Motion to Determine Competency to

14

Stand Trial. (D.E. 53). The parties' exhibit lists for the competency hearing were also filed publicly. (D.E.s 83 and 84). In addition, the competency hearing was open to the public/media, and they heard portions of the Butner calls played aloud during the proceedings, as well as testimony from the parties' respective expert witnesses concerning their interpretations of the recordings in relation to Mr. Jeffries' competency to stand trial. Transcripts of the four-day competency hearing are also available to the media/public. Furthermore, the parties discussed the Butner calls extensively in their publicly available memoranda of law regarding Mr. Jeffries' competency to stand trial.

These facts weigh in favor of granting Mr. Jeffries the narrowly tailored remedy that he seeks if he is found competent to stand trial: a temporary delay on the public's access to the Butner calls/transcripts until trial in this cause concludes. See Mirlis, 952 F.3d at 65 (concluding that, under the common law, the fact "that the substance of the desired content is publicly available in some format…tends…to cut against the public interest in the release of the content in a different form…since the primary public interest—general availability of the relevant information—has already been served."); see also In re NBC Universal, 426 F. Supp. 2d at 57 (explaining that the First Amendment values served by open proceedings require that citizens know what has transpired in the courtroom, not that they receive that information in its most dramatic form).

Mr. Jeffries' interest in preventing jury taint is well-founded and overrides the public's qualified right of access to these specific judicial records under the common law and First Amendment. Mr. Jeffries' request that the Court temporarily delay the release of the Butner calls to the public (should any request for same be made) until trial, if there is one, strikes an appropriate balance between the public's right of access and his Sixth Amendment right to a fair trial.

15

**2. Mr. Jeffries' Significant Privacy Interest in Maintaining his Personal Medical Information Confidential Overrides the Public's Right of Access to the January 2026 Competency Re-Evaluation Recordings**

Mr. Jeffries submits that sealing the audio recordings of his January 12 and 13, 2026 competency re-evaluation is warranted for the same reason that justified the sealed filing of his personal medical records and all prior competency evaluation reports prepared by the medical experts in this case: his significant privacy interest in keeping the personal medical information discussed during the evaluation confidential—which outweighs the public's qualified right of access under the common law and First Amendment.

Courts have acknowledged that "there is a recognized privacy interest in medical records," although such interest is neither "fundamental nor absolute." See United States v. Sattar, 471 F. Supp. 2d 380, 387–89 (S.D.N.Y. 2006) (holding that defendant's privacy interest in matters contained within psychiatric report submitted for sentencing purposes was "sufficiently compelling" to overcome the First Amendment's right of access); see also Amodeo, 71 F.3d at 1051 ("In determining the weight to be accorded an assertion of a right of privacy, courts should first consider the degree to which the subject matter is traditionally considered private rather than public.... [F]amily affairs, **illnesses**, embarrassing conduct with no public ramifications, and similar matters will weigh more heavily against access than conduct affecting a substantial portion of the public.") (emphasis added).

In addition, district courts "regularly seal medical information despite a presumption of the right to public access because an individual's privacy interest in their own medical information is a compelling countervailing interest." See Deide v. Day, Case No. 23-CV-3954-NSR, 2023 WL 8602879, at *2 (S.D.N.Y. Dec. 11, 2023) (sealing medical record signed by a doctor and submitted by defendant because it presented a "compelling and countervailing interest against the

16

presumption of public access") (internal citations and quotations omitted); see also United States v. Yeghoyan, Case No. 20-CR-652-VM, 2024 WL 2945976, at *3 (S.D.N.Y. June 11, 2024) (sealing defendant's medical records submitted in support of his compassionate release motion); United States v. Suarez, Case No. 16-CR-453-RJS, 2024 WL 2317413, at *1 (S.D.N.Y. May 22, 2024) (sealing addendum to motion for compassionate release containing defendant's medical records, due to the private medical information in same); United States v. Roeder, Case No. 05-CR-6161L, 2009 WL 385448, at *2 (W.D.N.Y. Feb. 13, 2009) (holding that letter exhibits from defendant's treating psychotherapist and psychiatrist, which described defendant's diagnoses, treatment, and medication, should be sealed because such documents contained physician-patient information that "is generally considered confidential").

The recordings of Mr. Jeffries' competency re-evaluation are, in essence, medical records. Indeed, there is no logical difference between sealing the competency evaluation reports (which the Court has already done) and also sealing the audio recordings upon which those reports are based. In addition, and similarly to the Butner calls, the public heard portions of these recordings during the competency hearing, listened to the expert witnesses testify about them, and the recordings were addressed extensively by the parties in their post-hearing memoranda of law.

The impact of sealing the recordings of Mr. Jeffries' competency re-evaluation on the public's right of access and ability to monitor these proceedings is minimal. Conversely, the negative effect of releasing these recordings on Mr. Jeffries' substantial privacy interest cannot be overstated. As such, Mr. Jeffries respectfully requests that the Court enter an order sealing the audio recordings of his January 12 and 13, 2026 competency re-evaluation.

## IV.    CONCLUSION

"The need for transparency is especially strong in criminal cases." <u>See</u> <u>In re NBC Universal</u>, 426 F. Supp. 2d at 51. However, against this need for transparency must be weighed the rights of an accused to a fair trial that is free of prejudice, passion, and excitement. <u>Id.</u> at 52. "A verdict induced only by evidence and argument in open court, and not by any outside influence is essential." <u>Id.</u> (internal quotation and citation omitted).

Mr. Jeffries respectfully submits that his Sixth Amendment right to a fair trial would be compromised if the public was permitted to access, copy, and distribute the Butner calls introduced during the March 24 to 27, 2026 competency hearing. Moreover, Mr. Jeffries' substantial privacy interest in his personal medical records overrides the public's right of access to obtain copies of the competency re-evaluation recordings. As such, Mr. Jeffries requests that the Court enter an Order: (1) temporarily sealing the Butner calls; and (2) sealing access to the recordings of the competency re-evaluation.

Respectfully submitted,

**GRAYROBINSON, P.A.**
Attorneys for Defendant
333 S.E. 2nd Avenue, Suite 3200
Miami, Florida 33131
Telephone: (305) 416-6880
Facsimile: (305) 416-6887
brian.bieber@gray-robinson.com
alek.ubieta@gray-robinson.com

By:    s/Brian H. Bieber
       BRIAN H. BIEBER
       New York Bar #4747507

By:    s/Alek Ubieta
       ALEK UBIETA
       Florida Bar #1039546
       *Admitted Pro Hac Vice*

18

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on May 28, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

s/Brian H. Bieber<br>BRIAN H. BIEBER

s/Alek Ubieta<br>ALEK UBIETA