

EMR/MEF/AT
F. #2023R00737

*610 Federal Plaza*
*Central Islip, New York 11722*

June 4, 2026

By ECF

The Honorable Nusrat J. Choudhury
United States District Judge
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

    Re:  United States v. Michael S. Jeffries
       Criminal Docket No. 24-423 (NJC)

Dear Judge Choudhury:

    The government respectfully submit this letter in response to the defendant Michael Jeffries's motion ("Def. Mot." or the "Motion") to temporarily seal 109 recordings of his telephone conversations (the "Recorded Calls") when he was committed to the Federal Medical Facility in Butner, North Carolina ("FMC-Butner") as well as the recordings of the competency re-evaluation interview. For the reasons stated below, the motion to temporarily seal the Recorded Calls should be denied. The government does not object to Jeffries's motion to seal the recordings of the competency re-evaluation interview.

I.  Background

    As the Court is aware, on December 10, 2024, pursuant to the authority set forth in 18 U.S.C. § 4241(a), the Court ordered Drs. Alexander S. Bardey and Cheryl Paradis to each conduct a psychiatric or psychological examination of Jeffries for the purpose of determining whether Jeffries presently suffered from a mental disease or defect rendering him mentally incompetent such that he was unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.

    Based upon the reports that followed, on May 2, 2025, the Court found by a preponderance of the evidence that Jeffries was presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he was unable to understand the nature and consequences of the proceedings against him or to properly assist in his defense. The Court further ordered that Jeffries should be committed to the custody of the Attorney General for a period not to exceed four months to determine whether his competency could be restored. (Dkt. No. 63.)

Thereafter, the Attorney General designated Jeffries to FMC-Butner. While at FMC-Butner, Jeffries regularly communicated with his partner and co-defendant, Matthew Smith by telephone. These telephone calls, and one additional call made by Jeffries to his son, were recorded. After Jeffries was released from FMC-Butner, on March 24, 25, 26 and 27, the Court held a hearing regarding Jeffries's competency to stand trial, at which six expert witnesses testified (the "Competency Hearing"). At the Competency Hearing, the government played several of the Recorded Calls, questioned experts extensively regarding the Recorded Calls, and successfully moved to admit the Recorded Calls into evidence. After the Competency Hearing, the government again cited the Recorded Calls extensively in its post-Competency-Hearing briefing (see ECF Nos. 102, 104), and filed Appendix A to its opening motion, which described in detail dozens of the Recorded Calls (see ECF No. 102-1 at 1-19). Media agencies also reported on the substance of many of the Recorded Calls, including the BBC.[1]

II.     Legal Standard

"The notion of public access to judicial documents is a capacious one." United States v. Erie County, N.Y., 763 F.3d 235, 241 (2d Cir. 2014). The First Amendment of the Constitution "protects the public's right to have access to judicial documents." Id. at 239. Under the First Amendment, access to judicial documents cannot be restricted "unless specific, on the record findings are made demonstrating that '[restricting access] is essential to preserve higher values and is narrowly tailored to serve that interest.'" Press-Enterprise Co. v. Super Ct. of Cal. for Riverside Cnty., 478 U.S. 1, 13-14 (1986) (Press-Enterprise II) (quoting Press-Enterprise Co. v. Super Ct. of Cal. for Riverside Cnty, 464 U.S. 501, 510 (1984) (Press-Enterprise I)).

III.     Analysis

The defense and the government agree that a public right of access to the Recorded Calls applies under the common law and the First Amendment. See Def. Mot. at 12.[2] And the defense and the government agree that, therefore, the Court is permitted to seal judicial records only if specific findings are made demonstrating that: (1) there is a substantial probability that the defendant's right to a fair trial will be prejudiced by publicity that closure would prevent; and (2) that reasonable alternatives to closure cannot adequately protect the defendant's fair trial rights. See Press-Enterprise II, 478 U.S. at 14.

---

[1]     See https://www.bbc.com/news/articles/c2034ww6kqxo (last visited June 4, 2026); https://www.businessinsider.com/abercrombie-fitch-ceo-prison-call-doctors-better-find-me-incompetent-2026-3 (last visited June 4, 2026)

[2]     A public right of access to the Recorded Calls applies because there is a history of similar proceedings being open to the public and because of the importance of transparency in proceedings of this kind. Courts have, in past, held that the public has a right of access to competency hearings and similar proceedings. United States v. Guerrero, 693 F.3d 990, 1001-02 (9th Cir. 2012) ("As the experience and logic factors are both met, the district court did not clearly err in finding a qualified First Amendment right of access to mental competency hearings.")

Because the defendant cannot overcome his burden of showing that there is a substantial probability that his right to a fair trial will be prejudiced by publicity of the Recorded Calls, his Motion should be denied. Contrary to the defendant's claims, effective <u>voir</u> <u>dire</u> will produce an unbiased jury in this case.

As explained by the <u>Press-Enterprise II</u> Court, "the First Amendment right of access cannot be overcome by the conclusory assertion that publicity might deprive the defendant of that right." 478 U.S. at 15. Courts in this Circuit and around the country consistently have "relied on thorough voir dire examinations . . . to produce unbiased juries." <u>United States v. Awadallah</u>, 457 F. Supp. 2d 246, 254 (S.D.N.Y. 2006) (internal quotation marks omitted). As explained by the <u>Press Enterprise II</u> Court, "through <u>voir</u> <u>dire</u>, cumbersome as it is in some circumstances, a court can identify those jurors whose prior knowledge of the case would disable them from rendering an impartial verdict." <u>Press-Enterprise II</u>, 478 U.S. at 15.[3] As explained by the court in <u>U.S. v. Volpe</u>:

> Careful voir dire questioning is a recognized and effective tool to uncover bias. <u>Patton</u>, 467 U.S. at 1038 n. 13, 104 S.Ct. at 2892 n. 13. Indeed, thorough voir dire examinations have been used in this circuit to produce unbiased juries, even in high-profile cases. <u>See</u> <u>In re Application of National Broadcasting Co., Inc.</u>, 635 F.2d 945, 953 (2d Cir.1980) ("The opportunity for voir dire examination still remains a sufficient device to eliminate from jury service those so affected by exposure to pre-trial publicity that they cannot fairly decide issues of guilt or innocence."); <u>United States v. Gotti</u>, 753 F.Supp. 443 (E.D.N.Y.1990); <u>United States v. Amuso</u>, 10 F.Supp.2d 227 (E.D.N.Y.1998) (organized crime); <u>United States v. Yousef</u>, 1997 WL 411596 at *3 (S.D.N.Y. July 18, 1997) (World Trade Center bombing case); <u>United States v. Livoti</u>, 8 F.Supp. 2d 246, 249 (S.D.N.Y.1998) (denying change of venue to Albany in high-profile police brutality case).

42 F. Supp. 2d 204, 218 (E.D.N.Y. 1999). <u>See also</u> <u>United States v. Tsarnaev</u>, 595 U.S. 302, 315 (2022) (district court did not abuse its discretion in <u>voir</u> <u>dire</u> process of Boston Marathon bombing case); <u>United States v. Skelos</u>, 988 F.3d 645, 659 (2d Cir. 2021) ("The district court empaneled a fair and impartial jury" in case where defendants claimed there was "pervasive, inflammatory, and deeply personal coverage" in New York City news media).

There is no indication that the media coverage of this case is more pervasive or potentially inflammatory than that in <u>Yousef</u>, <u>Tsarnev</u> or <u>Skelos</u>. Relatedly, the subject matter of

---

[3] The Supreme Court has also found that "even pervasive, adverse publicity does not inevitably lead to an unfair trial." <u>Nebraska Press Ass'n v. Stuart</u>, 427 U.S. 539, 554 (1976).

the Recorded Calls, i.e., the day-to-day life of Jeffries while incarcerated for a competency exam, is no more press worthy—let alone inflammatory—than the underlying allegations here, or than those in aforementioned cases, and particularly, Yousef and Tsarnev, which involved terroristic attacks that resulted in death. Yet, in each of those cases, voir dire was effective in impaneling impartial jurors. Moreover, given the defense's claims in its Motion regarding the media coverage of the defendant thus far (see Def. Mot. at 13), it appears that the defendant will be seeking extensive voir dire, undoubtedly about more press worthy topics, regardless of the publication of the Recorded Calls. The defense has not shown why release of the Recorded Calls will lead to an unmanageable or unsuccessful voir dire process when voir dire has consistently been found to be effective in other high-profile cases.

Moreover, as explained by Judge Bianco in denying motions for a pre-trial change of venue:

> Finally, the Court notes that the jury panel for this trial will be drawn "from the entire Eastern District of New York, which is comprised not only of Nassau and Suffolk Counties, but also of the boroughs of Brooklyn, Queens, and Staten Island." United States v. Prado, No. 10–CR–74 (JFB), 2011 WL 3472509, at *17 n. 12 (E.D.N.Y. Aug. 5, 2011). As noted in Prado "there are approximately eight million people residing in the Eastern District of New York," id. at *14, and the jury pool is "large and diverse," id. at *17 n. 12. Given the size and diversity of the jury pool, the Court does not find it reasonably likely " 'that prejudicial news prior to trial will prevent a fair trial.' " Maldonado–Rivera, 922 F.2d at 966–67 (quoting Sheppard, 384 U.S. at 363, 86 S.Ct. 1507).

United States v. Ayala, 64 F. Supp. 3d 446, 452 (E.D.N.Y. 2014). As in Ayala, the jury in this case will be drawn from the entire Eastern District of New York, which includes millions of people and is "large and diverse." Moreover, Ayala was affected by uniquely local coverage, which is not the case here, as the initial, and most consistent, reporting on this investigation has come from the BBC, which is based in the United Kingdom. Given the "size and diversity of the jury pool," it is not reasonably likely that release of the Recorded Calls, will prevent a fair trial.

As to the defense's motion to seal access to the recordings of the competency re-evaluation, because the underlying reports are sealed and are medical records, and for the reasons stated by this Court in its February 12, 2025 Order, addressing the Jeffries's privacy interest in the confidentiality of personal medical information, the government does not object to those recordings remaining sealed.

IV.     Conclusion

        For the reasons stated above, the government respectfully requests that the Court deny Jeffries's motion to temporarily seal the Recorded Calls.  The government does not object to Jeffries's motion to seal the recordings of his re-evaluation interview.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By:           /s/            
Erin Reid
Megan E. Farrell
Adam R. Toporovsky
Assistant U.S. Attorneys
(718) 254-7000

cc:    Clerk of the Court (NJC) (by ECF)
       Brian Bieber, Esq. (by E-mail)